IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**CYNTHIA IRENE GLASKOX**                                       **PLAINTIFF**

**v.**                                                      **Civil No. 1:16cv9-HSO-JCG**

**GEORGE COUNTY HOSPITAL, and**                      **DEFENDANTS**
**MARK STAVROS, MD**

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT GEORGE REGIONAL HEALTH SYSTEM, IDENTIFIED AS GEORGE COUNTY HOSPITAL'S MOTION [13] FOR JUDGMENT ON THE PLEADINGS

BEFORE THE COURT is the Motion [13] for Judgment on the Pleadings filed by Defendant George Regional Health System, identified as George County Hospital (the "Hospital"). This Motion has been fully briefed.

This Motion presents the question of whether a federal claim under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, against a political subdivision of a State is subject to State-law pre-suit notice requirements. Upon review of the record and persuasive legal authority, the Court finds that the answer to the question in this particular case should be in the affirmative, such that the Hospital's Motion [13] for Judgment on the Pleadings should be granted. The EMTALA incorporates and does not preempt Miss. Code Ann. § 11-46-11(1), the State-law requirement at issue here, that defendant municipalities be given pre-suit notice of tort claims pursuant to the Mississippi Tort Claims Act ("MTCA"), Miss. Code Ann. § 11-46-1, *et seq*. Plaintiff Cynthia Irene Glaskox's claims against the Hospital under the EMTALA will be therefore be

dismissed for failure to comply with the MTCA's strictly-construed pre-suit notice requirement.

## I. BACKGROUND

A. Factual Background

Plaintiff Cynthia Irene Glaskox ("Plaintiff") arrived at the Hospital's emergency department in the early morning hours on January 12, 2014, complaining of abdominal pain and stating that she had recently undergone abdominal surgery. Am. Compl. [5], at ¶10; Resp. [20], at 1. Defendant Dr. Mark Stavros ("Dr. Stavros") determined that Plaintiff was likely suffering from a bowel perforation and should be transferred to Oschner Medical Center in Jefferson Parish, Louisiana ("Oschner"), where her surgery had been performed.[1] Am. Compl. [5], at ¶¶ 11–12. Plaintiff alleges that while she was awaiting transfer, she went into shock and was not in a stable condition. Id. at ¶¶ 13–14.

Dr. Stavros and the Hospital proceeded with the transfer. Id. at ¶15. When Plaintiff arrived and was admitted at Oschner, she was severely hypotensive and her treatment resulted in ischemic limb complications. Id. at ¶¶ 17–18. Plaintiff had to undergo multiple limb amputations as a result of the ischemia. Id. at ¶19.

---

[1] In his Answer, Dr. Stavros alleges that,

> Ms. Glaskox was nine days post-op from colorectal surgery at Ochsner Medical Center, and the decision to transfer [her] to Ochsner Medical Center was to afford a higher level of care, by surgeons who were familiar with her surgical history.

Stavros Answer [24], at 3.

B.     Procedural History

On January 11, 2016, Plaintiff filed this civil action against the Hospital pursuant to the EMTALA. Compl. [1], at ¶17. Plaintiff asserted that the Hospital "violated the mandate of 42 U.S.C. § 1395(dd)(c), in transferring a patient who was unstable at the time of transfer to an outside facility resulting in injury to the patient or a lost chance of a better result." *Id.*

It is undisputed that the Hospital is a political subdivision of the State of Mississippi, and is owned and operated by George County, Mississippi, pursuant to Mississippi Code Annotated § 41-13-10, *et seq*. Community hospitals operated under Section 41-13-10 are considered political subdivisions of the State and tort claims against them are subject to the requirements of the MTCA. Miss. Code Ann. § 11-46-1(i). It is further undisputed that Plaintiff did not file a notice of claim or otherwise attempt to comply with the MTCA's pre-suit notice requirements found at Mississippi Code Annotated § 11-46-11(1), before filing her EMTALA suit against the publicly-owned Hospital.

On March 8, 2016, Plaintiff filed an Amended Complaint [5], adding Dr. Stavros as a Defendant and advancing a State-law claim against him for medical malpractice.[2] Along with the Amended Complaint, Plaintiff filed a copy of the

---

[2] Jurisdiction over Plaintiff's claim against Dr. Stavros is not dependent upon Plaintiff's federal EMTALA claim against the Hospital. Dr. Stavros is a resident of Florida, and Plaintiff is a resident of Mississippi. Plaintiff's State-law claims against Dr. Stavros have an independent jurisdictional basis in the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332.

Notice of Claim [5-1] that was sent to Dr. Stavros on January 5, 2016, and a Certificate of Compliance [5-2] pursuant to Mississippi Code Annotated § 11-1-58.

The Hospital filed the instant Motion [13] for Judgment on the Pleadings on March 28, 2016. The Hospital argues that because it is a political subdivision of the State of Mississippi, Plaintiff's claim for tort damages was subject to the MTCA's pre-suit notice requirement and should be dismissed for failure to provide the required notice of claim. Miss. Code Ann. § 11-46-11(1). Plaintiff filed a Response [19] arguing that the State-law notice requirement is preempted by the EMTALA because it directly conflicts with the EMTALA's statute of limitations, 42 U.S.C. § 1395dd(d)(2)(C). The Hospital, in turn, argues that the MTCA notice requirement is applicable to EMTALA claims and is not preempted, thereby mandating dismissal of Plaintiff's claims against it. Reply [21], at 8–9. The Hospital has further requested that, should the Court grant its motion for judgment on the pleadings, the Court enter a final judgment pursuant to Rule 54(b). Plaintiff has not opposed this request.

## II. DISCUSSION

A. <u>Legal Standard</u>

1. <u>Rule 12(c) Judgment on the Pleadings</u>

A party may move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) when "'the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts.'" *Keys v. Safeway Ins. Co.*, 556 F. Supp. 2d 586, 588 (S.D.

Miss. 2008) (quoting *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990)).  Judgment on the pleadings is appropriate if there are no questions of material fact and only purely legal questions remain.  *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002).  In this respect, the standard for deciding a motion for judgment on the pleadings under Rule 12(c) is the same as a Rule 12(b)(6) motion to dismiss for failure to state a claim.  *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).  To avoid dismissal, a plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

    2.    <u>The EMTALA</u>

Congress enacted the EMTALA to prevent "patient dumping" and ensure that hospital emergency rooms would not turn away patients on the basis of an inability to pay or for other non-medical reasons.  *Marshall v. E. Carroll Parish Hosp. Serv. Dist.*, 134 F.3d 319, 322 (5th Cir. 1998); *see also* 131 Cong. Rec. 28,569 (1985) (statement of Sen. Dole) ("We must put an end to certain unsafe practices . . . whereby a hospital, for purely financial reasons, refuses to initially treat or stabilize an individual with a true medical emergency.").  The EMTALA creates a private right of action against Medicare-participating hospitals that fail to screen and stabilize patients presenting for treatment, thereby allowing patients injured by a

hospital's failure to "obtain those damages available for personal injury under the law of the State in which the hospital is located." 42 U.S.C. § 1395dd(d)(2)(A).[3]

> To establish an EMTALA violation, a plaintiff must show that[:]
> (1) the hospital is a participating hospital, covered by EMTALA, that operates an emergency department (or an equivalent treatment facility);
> (2) the patient arrived at the facility seeking treatment; and
> (3) the hospital either
> > (a) did not afford the patient an appropriate screening in order to determine if she had an emergency medical condition, or
> > (b) bade farewell to the patient (whether by turning her away, discharging her, or improvidently transferring her) without first stabilizing the emergency medical condition.

*Correa v. Hosp. S.F.*, 69 F.3d 1184, 1190 (1st Cir. 1995) (citing *Miller v. Med. Ctr. of Sw. La.*, 22 F.3d 626, 628 (5th Cir. 1994)).

B.  **The EMTALA incorporates State law such that MTCA notice requirements apply to Plaintiff's claim.**

Before engaging in a preemption analysis, the Court first seeks to determine "whether federal law[, the EMTALA,] incorporates, expressly or impliedly, a state-mandated procedure with the attendant sanction that the federal right is defeated in the absence of compliance." *Brooks v. Md. Gen. Hosp*, 996 F.2d 708, 714

---

[3] Although not at issue in this case, the EMTALA contains two additional enforcement mechanisms. First, it allows the Government to impose civil monetary penalties against physicians and hospitals. 42 U.S.C. § 1395dd(d)(1); *see also Burditt v. U.S. Dep't of Health & Human Servs.*, 934 F.2d 1362, 1367 (5th Cir. 1991). Second, a private right of action is also created to allow a medical facility that suffers a financial loss resulting from another hospital's violation to "obtain those damages available for financial loss, under the law of the State in which the hospital is located, and such equitable relief as is appropriate." 42 U.S.C. § 1395dd(d)(2)(B).

(4th Cir. 1993). As the United States Court of Appeals for the Fourth Circuit noted in *Brooks*, "the answer to this question rests on the proper interpretation of the federal statute." *Id.* "In the absence of the federal statute's express or implied acceptance of the state based condition for federal liability, the state conditions simply cannot be recognized as conditions precedent to the vindication of a federally created right." *Id.*

The EMTALA creates a federal cause of action against a hospital, but its statutory structure works in concert with state law. *See id.* at 714–15 (describing EMTALA's role as a supplement to state tort and malpractice law). Specifically, the EMTALA permits patients injured by a hospital's violation of the statute to recover the amount of damages "available for personal injury under the law of the State in which the hospital is located." 42 U.S.C. § 1395dd(d)(2)(A). Congress was also clear that the EMTALA "do[es] not preempt any state or local law requirement, except to the extent that the requirement directly conflicts with a requirement of this section." 42 U.S.C. § 1395dd(f). Federal courts have recognized that an "EMTALA claim sounds in tort even though the duty violated arises in a federal statute." *Power v. Arlington Hosp. Ass'n*, 42 F.3d 851, 865 (4th Cir. 1994).

Under Mississippi law, a tort claim for damages against a State governmental entity shall be brought only under the provisions of the MTCA. Miss. Code Ann. § 11-46-7. The MTCA contains a pre-suit notice requirement. Miss. Code Ann. § 11-46-11(1). Before filing a claim for tort damages against a State

entity, a plaintiff must file a notice of claim with the entity's chief executive officer at least ninety days before filing suit. *Id.*

> (1) After all procedures within a governmental entity have been exhausted, any person having a claim under this chapter shall proceed as he might in any action at law or in equity, except that at least ninety (90) days before instituting suit, the person must file a notice of claim with the chief executive officer of the governmental entity.

*Id.* "[R]esponsibility to comply with the ninety-day notice requirement under Section 11-46-11(1) lies with the plaintiff." *Univ. of Miss. Med. Ctr. v. Easterling*, 928 So. 2d 815, 820 (Miss. 2006). The notice requirement is strictly construed: when a plaintiff has not given the required notice, her claims are subject to dismissal. *Id.*

Although the Court has not located any binding Fifth Circuit precedent addressing this issue, the Ninth and Second Circuits have concluded that state-law notice requirements apply to EMTALA claims against public hospitals. In *Draper v. Chiapuzio*, 9 F.3d 1391 (9th Cir. 1993), the Ninth Circuit held that Oregon's pre-suit notice law, requiring that a notice of claim against a public entity for wrongful death be filed within one year of the alleged loss or injury, applied to the plaintiff's EMTALA claim against a county hospital. *Id.* at 1393. Because the plaintiff in *Draper* had not complied with the State-law requirement, the Ninth Circuit affirmed dismissal of his suit. *Id.* at 1392.

Similarly, in *Hardy v. New York City Health & Hospitals Corp.*, 164 F.3d 789 (2d Cir. 1999), the Second Circuit held that New York's pre-suit notice law, requiring notice within ninety days of the occurrence (with the option to apply for

leave to file a late notice), applied to the plaintiff's EMTALA claim against a city hospital. *Id.* at 794. Because the plaintiff did not timely file the required notice or request leave to file a late notice before the expiration of the EMTALA's two-year statute of limitations, the Second Circuit affirmed judgment on the pleadings in favor of the hospital. *Id.* at 796.

The Second Circuit reasoned that state notice-of-claim requirements, which are "a 'condition precedent' to suing for damages in a personal injury action against a municipality," apply as a necessary part of the incorporated state law on personal-injury damages under a broad reading of § 1395dd(d)(2)(A) (allowing recovery for damages available under the "law of the State"). *Id.* at 794. The Second Circuit also based its conclusion on the EMTALA's "express deference to state law" in Section 1395dd(f), and an analysis of legislative history revealing EMTALA's intended role "as a 'gap-filler' for state malpractice law." *Id.* (citing *Brooks*, 996 F.2d at 714).

Other cases Plaintiff cites to support the conclusion that state notice rules should not apply to EMTALA claims are distinguishable on their facts because they involve far more complicated procedural hurdles than Mississippi's notice requirement. *See* Mem. Resp. [19-1], at 13–14. In *Cooper v. Gulf Breeze Hospital*, 839 F. Supp. 1538 (N.D. Fla. 1993), a Florida district court held that the EMTALA did not incorporate Florida's medical malpractice damage caps because those damages caps were also tied to extensive state procedures "such as the requirement that a plaintiff conduct a pre-suit investigation." *Id.* at 1541–43; *see also Reid v.*

9

*Indianapolis Osteopathic Med. Hosp., Inc.*, 709 F. Supp. 853, 855 (S.D. Ind. 1989) (finding extensive state procedures including medical review panels preempted).

Similarly, in *Power v. Arlington Hospital Association*, 42 F.3d 851 (4th Cir. 1994), the Fourth Circuit held that Virginia's limits on tort liability for tax-exempt hospitals applied to the plaintiff's EMTALA claim, but that medical malpractice procedural requirements, such as notice and submission of a claim to a medical malpractice review panel, did not.[4] *Id.* at 866. The Fourth Circuit reached this decision by narrowly interpreting § 1359dd(2)(A) "as refer[ing] [courts] to state law only in determining 'those damages available for personal injury' actions against hospitals, no further." *Id.*

Even applying *Power*'s more narrow interpretation of § 1359dd(2)(A), the Court finds that Mississippi's notice-of-claim requirement is more akin to a mere notice that a claim seeks "those damages available for personal injury," in that personal-injury damages against public defendants are available only when pre-suit notice has been given. Miss. Code Ann. § 11-46-11(1). As such, under either the Second Circuit's broader or the Fourth Circuit's more narrow interpretation of § 1359dd(2)(A), the same result occurs here: Mississippi's pre-suit notice requirement

---

[4] The Fourth Circuit based its reasoning on a Virginia Supreme Court decision, *Smith v. Richmond Memorial Hospital*, 416 S.E.2d 689 (Va. 1992), in which the Virginia Supreme Court distinguished its extensive procedural requirements from the notice requirement analyzed by the Ninth Circuit in *Draper*. *Id.* at 695 ("Unlike the Oregon requirement, the Virginia notice of claim provision is not restricted to a mere notice.").

for recovering personal-injury damages from a public entity applies to an EMTALA claim.

Plaintiff cites and extensively quotes a contrary decision of the New Mexico Court of Appeals in *Godwin v. Memorial Medical Center*, 25 P.3d 273 (N.M. Ct. App. 2001), which departed from *Hardy* and *Draper* and held that New Mexico's ninety-day notice-of-claim requirement was preempted by, and therefore not applicable to, an EMTALA claim. *Id.* at 281–82 (merging the applicability and preemption analysis); *see also* Resp. [19-1], at 9, 11–12, 14. The Court does not find the reasoning contained in this opinion more persuasive or authoritative than that of the Second and Ninth Circuits. The vigorous dissent in *Godwin* and subsequent appellate history of the case, with the New Mexico Supreme Court granting certiorari on June 4, 2001, then quashing the writ on April 26, 2002, further suggest that this decision is of less persuasive value. *See Godwin v. Mem'l Med. Ctr.*, 46 P.3d 100, 100 (N.M. 2002).

Acknowledging that this issue, whether Mississippi's state-law notice requirements apply to an EMTALA claim against a public entity, appears to remain an open question in the Fifth Circuit, this Court finds the reasoning of the Ninth and Second Circuits in *Draper* and *Hardy* persuasive when considered in light of the particular provision of the MTCA at issue in this case and its similarity to the

requirements challenged in *Draper* and *Hardy*.[5] The EMTALA expressly incorporates state-law requirements that do not directly conflict with its provisions. A requirement under Mississippi law for recovery of personal-injury damages against a public entity is the filing of a pre-suit notice of claim. Accordingly, compliance with Mississippi's pre-suit notice requirement, Miss. Code Ann. § 11-46-11(1), is a condition precedent to Plaintiff's recovery in this case of personal-injury damages against the publicly-owned Hospital under the EMTALA, unless that requirement directly conflicts with the EMTALA.

C.  <u>The MTCA's pre-suit notice requirement does not "directly conflict" with the EMTALA, and is therefore not preempted.</u>

Having determined that state pre-suit notice requirements for instituting a suit for damages against a public entity may be applied to a plaintiff's federal EMTALA claim, the Court must next assess whether the specific pre-suit notice requirement found in the MTCA, Miss. Code Ann. § 11-46-11(1), is preempted by the EMTALA. Congress preempts state law in two circumstances: (1) field preemption, when federal law intends to "occupy the field;" and (2) conflict preemption, when state law conflicts with a federal statute.[6] *Crosby v. Nat'l*

---

[5] The Court further notes that *Draper* and *Hardy* are not recent decisions, and Congress has had many years to amend or correct the EMTALA to expressly exclude state-law notice requirements if it felt those cases to be wrongly decided.

[6] This Court has previously held that field preemption does not apply to the EMTALA. *McCullough v. River Region Med. Ctr.*, No. CIVA 5:8cv187, 2008 WL 2157118, at *3 (S.D. Miss. May 19, 2008) ("EMTALA is structured so as to only preempt state laws which directly conflict with a requirement set forth in EMTALA (which is essentially ordinary conflict preemption) and explicitly contemplates the

*Foreign Trade Council*, 530 U.S. 363, 372 (2000).  Here, Plaintiff argues that conflict preemption renders the MTCA's notice requirement inapplicable to her federal claim.  Conflict preemption applies when (1) "it is impossible for a private party to comply with both state and federal law" and (2) "where under the circumstances of a particular case, the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 372–73 (quotation marks omitted and alteration adopted).

      1.     <u>Plaintiff's compliance with the MTCA was not impossible.</u>

It is certainly possible for an EMTALA claimant to send an MTCA notice of claim to a State defendant ninety days before filing suit and still take advantage of the full two-year limitations period provided by Congress.  Plaintiff argues that such notice effectively shortens the two-year statute of limitations.  Mem. Resp. [19-1], at 11.  But, "the test is whether compliance is impossible, not whether noncompliance is possible." *Draper*, 9 F.3d at 1393.  Following the Ninth Circuit's reasoning in *Draper*,

> compliance with both federal and state law is not a 'physical impossibility.'  In fact, it is easy.  A plaintiff need simply give the required notice under the state statute within one year and file his lawsuit under the [EMTALA] within two years.

*Id.*  This Court finds Mississippi's pre-suit notice law also does not infringe upon a plaintiff's ability to take advantage of the full two-year limitations period

---

viability of state-law claims which are not so preempted.").

contemplated by the EMTALA. The MTCA merely provides an additional prerequisite procedure to filing suit when the defendant is a State entity.

In this case, Plaintiff was obviously aware that the Hospital was a public hospital and a "political subdivision of the State of Mississippi," when she filed her Complaint. *See* Compl. [1], at ¶2. The Court has not been made aware of any circumstances that would have made it impossible for Plaintiff to file the required notice before instituting her tort suit for damages against this public hospital.

Also relevant to the Court's impossibility analysis is that Plaintiff complied with pre-suit requirements under State law before bringing her State-law medical-malpractice claim against Dr. Stavros, by submitting a notice of claim pursuant to Mississippi Code Annotated Section 15-1-36 at least sixty days before filing suit, and by obtaining a pre-suit consultation with an expert pursuant to Section 11-1-58. Plaintiff has not presented any facts that would have prevented her from complying, or made it impossible for her to comply, with the MTCA's notice-of-claim requirement as to the Hospital.[7]

---

[7] Although possibly preempted by the EMTALA's two-year statute of limitations, 42 U.S.C. § 1395dd(d)(2)(C) as discussed infra note 8, the Court finds it relevant that pursuant to Miss. Code Ann. § 11-46-11(3), the MTCA's shorter one-year statute of limitations is tolled by the filing of a notice of claim, indicating that despite its mandatory nature, compliance with this requirement was intended to be simple, not impossible.

> (a) . . . filing a notice of claim within the required one-year period will toll the statute of limitations for ninety-five (95) days from the date the chief executive officer of the state entity or the chief executive officer or other statutorily designated official of a political subdivision receives the notice of claim. [and]

14

2.     The MTCA notice requirement does not directly conflict with the
                  purpose of the EMTALA.

The purpose of the MTCA notice requirement is to inform governmental entities of the existence of a claim that may give rise to a lawsuit in the future. *Copiah Cty. Sch. Dist. v. Buckner*, 61 So. 3d 162, 169 (Miss. 2011).  The MTCA allows tort victims to recover damages from political subdivisions of the State, but imposes notice requirements and other procedural restrictions in exchange for this waiver of sovereign immunity.[8]  Miss. Code Ann. § 11-46-11; *c.f., Root v. New Liberty Hosp. Dist.*, 209 F.3d 1068, 1070 (8th Cir. 2000) (describing how Missouri's sovereign immunity statute was in conflict with and preempted by the EMTALA because (unlike the MTCA), it provided that plaintiffs "may not sue public entities

---

     (b) No action whatsoever may be maintained by the claimant until the claimant receives a notice of denial of claim or the tolling period expires, whichever comes first, after which the claimant has an additional ninety (90) days to file suit; failure to file within the time allowed is an absolute bar to any further proceedings under this chapter.

Miss. Code Ann. § 11-46-11(3).

   [8] It is possible that the MTCA's one-year statute of limitations, Section 11-46-11(3), would directly conflict with and be preempted by the EMTALA's two-year statute of limitations, 42 U.S.C. § 1395dd(d)(2)(C).  *Holmberg v. Armbrecht*, 327 U.S. 392, 395 (1946) ("If Congress explicitly puts a limit upon the time for enforcing a right which it created, there is an end of the matter. The Congressional statute of limitation is definitive.").  However, an individual statutory provision is presumed to be severable "if what remains after severance is fully operative as a law." *I.N.S. v. Chadha*, 462 U.S. 919, 934 (1983) (quotation and citation omitted).  The MTCA notice requirement would remain fully operative as law upon severance from the provision setting forth the one-year statute of limitations, which arguably would be preempted by the EMTALA.

unless sovereign immunity is expressly waived," effectively eliminating public hospitals' liability under the EMTALA).

The Mississippi Supreme court strictly construes the MTCA notice requirement, and requires dismissal of claims that do not comply with Section 11-46-11(1). *Montgomery v. Mississippi*, 498 F. Supp. 2d 892, 905 (S.D. Miss. 2007) (citing *Easterling*, 928 So. 2d at 819–20). If the MTCA's notice requirement is not preempted by the EMTALA, Plaintiff's case against the Hospital must be dismissed for failure to provide notice. *See Tallahatchie Gen. Hosp. v. Howe*, 49 So. 3d 86, 91–93 (Miss. 2010) (affirming dismissal of a plaintiff's tort claim against a county hospital for failure to provide pre-suit notice).

The Court is cognizant of the extremely unfortunate facts surrounding this case. However, even though applying the State-law notice rule may result in the dismissal of Plaintiff's federal EMTALA claim, the United States Supreme Court has cautioned against applying an outcome-determinative test in analyzing inconsistent intent. *See Robertson v. Wegmann*, 436 U.S. 584, 594–95 (1978) ("[T]he mere fact of abatement of a particular lawsuit is not sufficient ground to declare state law 'inconsistent' with federal law.").[9] Instead, the Supreme Court focuses its inconsistency inquiry on "whether application of state law 'would be

---

[9] As further support for not applying an outcome-determinative test, the Court notes that a patient's suit for personal-injury damages is not the only method available for vindicating the EMTALA's purpose. *See supra* note 3. Even when a patient's civil suit is dismissed without an adjudication on the merits, the Government's enforcement action and transferee hospital's action also exist to remedy an EMTALA violation under the statutory scheme created by Congress.

inconsistent with the federal policy underlying the cause of action under consideration.'" *Id.* at 590; *see also Slade v. City of Marshall, Tex.*, 814 F.3d 263, 267 (5th Cir. 2016) (quoting *Robertson*, 436 U.S. at 590).

The policy underlying the EMTALA is to prevent patient-dumping by hospitals and ensure that patients are not denied care for nonmedical reasons. *Marshall*, 134 F.3d at 322. Mississippi's pre-suit notice requirement is not in direct conflict with this policy. *See also Johnson v. Nacogdoches Cty. Hosp. Dist.*, 109 S.W.3d 532, 536 (Tex. App. 2001) ("[T]he [Texas Tort Claims Act's] notice requirement does not thwart EMTALA's purpose of preventing hospitals from turning away uninsured patients who seek emergency treatment."). In theory, providing hospitals with notice of a claim before suit is filed may permit the hospital to respond to patient allegations more quickly and act sooner to prevent further similar treatment, thereby fulfilling Congress' intent under the EMTALA.

In arguing that Mississippi's pre-suit notice requirement conflicts with federal policy underlying the EMTALA, Plaintiff cites several cases where courts have found state requirements preempted based on "potential direct conflict[s]." Resp. [19-1], at 13. A district court in Colorado followed the reasoning of the Fourth Circuit in *Power* and found that the Colorado Governmental Immunity Act ("CGIA") applied to EMTALA claims, but determined that the CGIA's 180-day post-occurrence notice provision was preempted because it was "potentially in direct conflict with EMTALA's statute of limitations." *Bird v. Pioneers Hosp.*, 121 F. Supp. 2d 1321, 1323 (D. Colo. 2000) (citing *Power*, 42 F.3d at 866 ("Virginia's

17

procedural requirements are potentially in direct conflict with, and therefore inconsistent with EMTALA . . . .")).

Similarly, citing *Bird* and *Power*, a Utah district court found its state's procedural requirements preempted because of a "potential direct conflict." *Merce v. Greenwood*, 348 F. Supp. 2d 1271, 1276 (D. Utah 2004) (distinguishing *Draper* and *Hardy* further because "Utah's medical malpractice scheme . . . requires not only the simple filing of a notice-of-claim but also undergoing a pre-litigation panel review process during which the statute of limitations is tolled").

The Court questions whether the "potentially in direct conflict" language found in the *Bird, Power*, and *Merce* decisions is problematic.  Congress provided in the EMTALA that state and local laws were only preempted "to the extent that the requirement *directly conflicts* with a requirement of this section." 42 U.S.C. § 1395dd(f) (emphasis added).  Potentiality for direct conflict was not explicitly articulated as part of the preemption analysis.  Moreover, the Supreme Court has repeatedly stated that conflict preemption should be analyzed "'under the circumstances of a particular case.'" *Crosby*, 530 U.S. at 373 (quoting *Hines v. Davidowitz,* 312 U.S. 52, 67 (1941)) (alteration adopted).  If there is no actual direct conflict between two laws under the circumstances of the particular case, there is no need for this Court to construe a "potential direct conflict" not presently before the Court when engaging in a preemption analysis.  *See also Hardy*, 164 F.3d at 795 ("[U]nless a state requirement directly conflicts with an EMTALA requirement, the state requirement is not preempted.").

Basing its analysis on the statutory language invoking preemption in cases of direct conflict, this Court finds that the MTCA's notice requirement does not directly conflict with the EMTALA under the particular circumstances of this case.

### III.  CONCLUSION

To the extent the Court has not addressed any of the parties' arguments, it has considered them and determined that they would not alter the result.  The Court finds that the requirements of the MTCA apply to EMTALA claims where not in direct conflict with EMTALA, and that the MTCA pre-suit notice requirement is not in direct conflict and is not preempted in this case.  Compliance with the MTCA pre-suit notice requirement was not impossible, and requiring a notice of claim before filing suit does not directly conflict with Congress' purpose in enacting the EMTALA.  Plaintiff was required to file a notice of claim before instituting her EMTALA suit against the Hospital.  Because it is undisputed that she did not do so, her claim against the Hospital must be dismissed.

Additionally, upon due consideration, the Court is of the opinion that although this Order adjudicates the rights and liabilities of fewer than all the parties, there is no just reason for delay and a final judgment should be entered in favor of the Hospital pursuant to Rule 54(b) as to all claims asserted against it.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion [13] for Judgment on the Pleadings filed by Defendant George Regional Health System, identified as George County Hospital is **GRANTED**.  Plaintiff's claims against Defendant George Regional Health System, identified as George County Hospital

are hereby **DISMISSED** for failure to comply with the notice requirement found in Mississippi Code Annotated § 11-46-11(1).

**IT IS, FURTHER, ORDERED AND ADJUDGED** that pursuant to Rule 54(b), there is no just reason for delay and a final judgment should be entered in favor of Defendant George Regional Health System, identified as George County Hospital, as to Plaintiff's claims asserted against it.

**SO ORDERED AND ADJUDGED**, this the 1st day of August, 2016.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE